STEGALL *v.* RUMPH.

5-1255                                    303 S. W. 2d 571

Opinion delivered July 1, 1957.

*S. Hubert Mayes, Shackleford & Shackleford,* by *J. M. Shackleford, Jr.,* for appellant.

*L. B. Smead* and *Mahony & Yocum,* for appellee.

CARLETON HARRIS, Chief Justice. Mrs. Bessie Stegall, 62 years of age, was a passenger in an automobile with several members of her family, on the night of January 18, 1955, when said automobile was involved in a head-on collision with another car, driven by one Raymond Dennis, on the Magnolia highway, a few miles from the city limits of El Dorado, Arkansas.[1] An ambulance was dispatched from the Rumph Mortuary to the scene of the collision to carry the injured persons to the hospital. The ambulance (a 1952 Cadillac) was driven by Clarence Biggers, an employee of the mortuary, who was accompanied by Clarence Strother, another employee. At the scene of the collision, Mrs. Stegall, her grandson, and her daughter, were transferred from their automobile to the ambulance. Mrs. Stegall was placed on a stationary cot located on the right side of the rear compartment; her grandson was placed on a cot on the left side of the compartment; and the daughter took a seat on the floor immediately back of the driver's seat. Strother assumed a standing position in the aisle between the cots. Biggers left the scene intending to go to the Warner Brown Hospital in El Dorado. At the intersection of West Avenue and Main Street, the ambulance collided with an automobile being driven by appellee, Lucille (Mrs. W. E.) Hickman, which was traveling east on Main. Mrs. Stegall was transferred to another ambulance and taken on to the hospital where she remained for eighty-eight days. During this period, her left breast was removed,[2] and she received treatment for fractures to both legs, fractured ribs, broken nose, and other injuries of a less serious nature.

---

[1] Mrs. Stegall and her husband brought suit against Dennis in the Union Circuit Court for damages suffered on account of injuries to Mrs. Stegall in this collision. The suit was settled on December 6, 1955, for $6,750.00.

[2] Because of a malignant tumor.

On March 10, 1956, Mrs. Stegall and her husband instituted this action against appellees, jointly and severally, seeking damages for injuries alleged to have been received in said ambulance collision. The complaint alleged that both appellees were guilty of negligence. Appellee, Rumph Mortuary, answered, denying negligence and denying that appellant, Mrs. Stegall, was injured. Appellee, Lucille Hickman, answered, denying any negligence on her part, alleging negligence on the part of the ambulance driver, and by amendment to her answer, alleged that whatever injuries Mrs. Stegall received were suffered in the previous collision with Dennis. On trial of the case, a jury verdict was returned in favor of the Rumph Mortuary and Lucille Hickman. From such verdict, appellants bring this appeal, contending the verdict is contrary to both the law and the evidence, and asking that said cause be remanded for a new trial.

The verdict was general; accordingly, there is no way to determine whether the verdict was based on a finding of no negligence on the part of the appellees, or whether it was based on the finding that Mrs. Stegall did not establish that she was injured in this collision (or both).

Appellees first contend that Mrs. Stegall was not injured in the second accident. No point would be served in detailing the testimony relating to the alleged injuries received, though some of the same injuries appear to have been also alleged in the suit against Dennis. Mrs. Stegall testified that the impact knocked her down between the two cots on her left side . . . her legs were still on the bed . . . that Strother fell on the cot across them . . . she felt pain in her ankles . . . she felt pain in her left side . . . her left breast struck the wheel of the cot upon which the grandson was lying. Biggers testified that after the collision, Mrs. Stegall's body, from the waist up, was still on the cot, that her hips were off, and her feet on the floor between the cots. Strother testified likewise, and further testified that he was not thrown upon Mrs. Stegall's body. Two physicians, in answer to a hypothetical

question embodying appellants' theory of the case, (as to the manner in which Mrs. Stegall's injuries were sustained) testified that the leg fractures could have been received in the second collision, and one testified that the breast could have been injured by striking the wheel of the cot, but neither would testify that said injuries did occur at the time of the second collision. Two other physicians, in answer to hypothetical questions embodying appellees' theory, testified, that, in their opinion, the leg injuries were sustained in the first collision, and one testified that he thought the rib injuries occurred in the first. While the physicians fairly well agreed that the breast cancer would not have been caused by the injury complained of, and that Mrs. Stegall was afflicted with this malignancy before either of the collisions, they were in disagreement as to whether or not an injury would aggravate this condition or hasten the necessity of the removal of the breast.

Rev. Cecil Owen, a minister, testified that he was the first person to arrive at the scene of the Dennis collision, that the car in which Mrs. Stegall was riding "was a total loss," and that Mrs. Stegall was in the front "between the dashboard and the seat, and just crumpled down there on the floor board." In manner to the question as to the position of her feet and legs below the knees, he replied:

"Well, they was under her; I don't know just how they were folded. * * * She was wedged against the seat with her back against the seat and her chest was against the dashboard, and the rest of her weight down on the floorboard with her feet and legs down under her."

Quoting further from the testimony:

"Q. In that position, state how much space between the dashboard and seat she occupied.

A. I don't . . . she might . . . she bent the dashboard in as the impact happened. And she had the whole space full up."

Further quoting:

"Q. How did you take her in the ambulance?

A. She went in by her main body, her head went first.

Q. In which door?

A. Well, there is a door up on the right side.

Q. Are you sure she wasn't put in the back end of that ambulance?

A. No, sir; she went in this front side.

Q. And how many men were carrying her?

A. Three.

Q. Why didn't you let her walk?

A. Well, I don't think she was able to walk.

Q. Why don't you think she was able to walk?

A. Well, she didn't seem to have any use of her legs, in the first place. That's the main reason.

Q. Was she complaining?

A. Well, yes, sir, she complained of her chest, she complained of her legs, and also the cut or gash, whichever it was, about her nose there.''

Certainly there was substantial evidence that Mrs. Stegall's injuries were sustained at the time of the first collision, and this may well have been the reason for the jury's returning a verdict for appellees. The jury was properly instructed as to the law relative to determining whether Mrs. Stegall was injured in the second collision, and it is not contended otherwise by appellants; in fact, it is not argued that any of the instructions given in the case were erroneous. This court, of course, will not disturb the verdict of a jury if there is any substantial evidence to support same. *Humphries* v. *Kendall,* 195 Ark. 45, 111 S. W. 2d 492.

We come now to consider the question as to whether appellees were guilty of negligence. Here, too, if there be substantial evidence to support the finding of

the jury, the verdict will not be disturbed. The evidence showed that a drizzling rain was falling, and that the weather was somewhat windy and foggy on the night in question. On entering the city limits, the ambulance was traveling on Hillsboro, and continued on that street until reaching West Avenue. West Avenue is the main street going from the city, and is well congested with traffic. The ambulance turned north on West Avenue and proceeded down the street. Biggers testified that he went through three street intersections with the traffic light showing green, and that as he went through the third (at Cedar Street) he observed that the light at the intersection of West Avenue and Main (1 block away) had changed to amber. He proceeded on and entered the intersection, but was unable to say as to whether the light was still amber or had turned to red at the time he entered. According to his evidence, the intersection of West Avenue and Main is a ''blind'' corner because the telephone building is located on the edge of the street. Consequently, traffic approaching from the left could not be observed, and he did not see Mrs. Hickman until he had entered the intersection. He testified that at the time, he was driving at a speed of 25 to 30 miles per hour, was sounding his siren, and flashing the emergency lights. Appellee, Mrs. Hickman, testified that when she entered the intersection, the traffic light was green, and she was in second gear. She further testified that she did not hear the siren, nor did she ever see the ambulance. Under the law, the ambulance being an emergency vehicle, it was the statutory duty of Mrs. Hickman to stop her car and remain stationary until the ambulance had passed, provided the ambulance driver was signaling his approach by siren.[3] We conclude that there was plainly a jury question as to whether the collision was caused by the negligence of Biggers or of Mrs. Hickman — of both — or of neither. All of these issues were properly submitted to the jury by the court.

On March 11, 1957, this court entered an order, in compliance with motion of appellees, to require appellants to pay costs of furnishing additional portions of

[3] Ark. Stats. (1947) Anno., Vol. 6, Sec. 75-625.

the record. This amounted to $100. After a study of the complete record, we conclude that this particular cost item should not be borne by appellants. Appellees are accordingly directed to repay said amount to appellants.

With such modification, the cause is affirmed, with costs adjudged against appellants.